# Silvey & Company *v.* Cook.

## *Bill to Enforce Vendor's Lien.*

(Decided December 17, 1914.   Rehearing denied February 11, 1915.
68 South. 37.)

1. *Vendor and Purchaser; Lien; Judgment Creditor; Notice.*—Under section 3413, Code 1907, a vendor's lien is invalid as to judgment creditors of the vendee, who purchased at an execution sale of the property under their judgment, where they had no notice of such lien prior to their becoming judgment creditors.

2. *Same; Action to Enforce; Notice.*—Where the bill was to enforce a vendor's lien against judgment creditors of the vendee purchasing the property at an execution sale, under their judgments, the complainant had the burden to show that when respondents became judgment creditors with a lien, they had notice of the outstanding vendor's lien, or such knowledge as should have put them on inquiry.

3. *Same; Innocent Purchaser; Transferee.*—Where judgment creditors of the vendee purchased at an execution sale under their judgment, without notice of an outstanding vendor's lien, their vendees or transferees succeed to their right as innocent purchasers for value without notice, although having knowledge of the lien.

4. *Same; Recordation; Notice.*—A vendor's lien not being within the purview of section 3383, Code 1907, the recordation of vendor's lien notes is not effective to impose notice thereof on subsequent purchasers thereof.

5. *Executions; Sale Under; Purchasers; Constructive Notice.*—The fact that purchasers of property at execution sale, which was subject to a vendor's lien, knew that the vendee had been adjudicated a bankrupt, was not effective to make it their duty to consult the bankruptcy proceedings and petition to ascertain whether the indebtedness of the bankrupt was secured by liens.

6. *Attorney and Client; Knowledge of Attorney; Notice.*—Knowledge of pertinent facts coming to an attorney while in the authorized particular service of his client, is imputed to the client, although the client had no actual notice of the fact.

7. *Same; Presumption.*—Where certain papers which were withdrawn by an attorney of the party with consent of the court, disclosed the existence of a vendor's lien, such attorney presumably acquired an actual notice of the existence of such lien, which must be imputed to the client.

8. *Notice; Mistake in Name; Putting on Inquiry.*—The fact that a paper alleged the existence of a vendor's lien in favor of "Kemp" instead of "Camp," of whose contents the party had notice, did not render the paper ineffective as notice, where reasonable inquiry would have disclosed the vendor's true name.

[Silvey & Company v. Cook.]

9. *Vendor and Purchaser; Lien; Evidence; Notice.*—The evidence examined and held to show that the present owner of the property was told of the lien of the vendor before he paid the purchase price.

APPEAL from Cleburne Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by V. A. Cook, as administrator, against Silvey & Company, and others, to enforce a vendor's lien. From a decree for complainant, respondent Silvey & Company appeals. Reversed and remanded.

BLACKWELL & AGEE, for appellants.

KNOX, ACKER, DIXON & STERNE, and MERRILL & WALKER, for appellee.

MCCLELLAN, J.—The appellee filed this bill to establish and to enforce a vendor's lien inuring to his intestate, Mrs. S. E. Camp, in consequence of a sale of land to W. P. Ayers on October 11, 1900. The respondents Silvey & Co., and Grambling-Spalding Company obtained judgments against W. P. Ayers in the circuit court of Cleburne county on March 10, 1904; and in April, 1904, executions to enforce their collection were levied on the property here in question, sale thereof was had in due course, and, the named companies being the purchasers at the sum of the judgments and costs, they received a conveyance of the land from the sheriff. On the 6th day of April, 1910, the companies having theretofore recovered the possession of the property, an executory contract of sale was made by the companies with C. K. Ayer, a respondent (at the price of $1,200), who made a cash payment of $500, and who has since through annual payments discharged his obligation to the companies, and, in consequence, received a conveyance which is in part a quitclaim and in part a warranty of therein described portions of the land.

(1, 2) The only real issue in the cause was and is whether the named companies, or C. K. Ayer, or all of them, were innocent purchasers for value and without notice of the outstanding vendor's lien, and, if so, due to be protected under the doctrine thus established. The named companies trace whatever rights they had in or to the lands in question to their purchase at an execution sale under judgments in their favor against W. P. Ayers, Mrs. Camp's vendee. If these companies had no notice of the vendor's lien, claimed by the complainant, before or at the time they became judgment creditors with a lien, then they were and are entitled to the protection accorded innocent purchasers for value without notice.—Code 1896, § 1042; same section, Code 1907, § 3413; *Preston v. McMillan,* 58 Ala. 84; *Walker v. Elledge,* 65 Ala. 51; *Dickerson v. Carroll,* 76 Ala. 337; *Truss v. Miller,* 116 Ala. 494, 22 South. 863, among others. There are expressions in the cases of *Clemmons v. Cox,* 114 Ala. 355, 21 South. 426, and *Ezzell v. Brown,* 121 Ala. 150, 25 South. 832, and perhaps others, that would seem to indicate a departure from the rule of the statute and of the decisions before cited. Such expressions must be regarded as inadvertent, and in no sense intended to deflect from the doctrine the statute and decisions under it have long since established in this state. The burden of proof was upon complainant to show that, before or at the time the companies became judgment creditors with a lien, they had notice of the vendor's lien outstanding in Mrs. Camp, or in her successors in right, or knowledge of such facts or circumstances as should have put upon the companies the duty of inquiry.—*Hodges v. Winston,* 94 Ala. 576, 10 South. 535; *Richards v. Steiner,* 166 Ala. 353, 52 South. 200.

(3) If the named companies were innocent purchasers for value at the execution sale under their judgments against W. P. Ayers, then even though C. K. Ayer had notice of this outstanding vendor's lien before or at the time of his purchase from the companies, and so regardless of the character of the conveyance to him, C. K. Ayer would be protected in the rights acquired by him from such innocent purchasers for value without notice at the execution sale.—*Martinez v. Lindsey*, 91 Ala. 334, 8 South. 787; *Prince v. Carter*, 186 Ala. 535, 65 South. 326.

We find no merit in the insistences that the amended answers were insufficient in the assertion of right to the protection accorded bona fide purchasers, or, that the predicate was too deficient to allow secondary evidence of the contents of the (lost) deed from Camp to W. P. Ayers.

(4) The filing for record or the recordation of the notes of W. P. Ayers—as attempted to be amended by him by agreement with successors to the rights therein of the payee, Mrs. Camp—was without effect to impose notice, constructive or otherwise, upon the named companies; those instruments not being of the classes of instruments (contracts) allowed to be recorded, and, when filed or recorded, having the effect of imputing notice to those taking subsequent rights in the premises.—Code, § 3383. These were not instruments in the nature of a mortgage, or creating as the result of a contract an equitable mortgage, but simply (after amendment) promises to pay for the purchase price of land. The instrument considered in *O'Neal v. Seixas*, 85 Ala. 80, 4 South. 745, was totally different from these notes in its terms and legal effect.—See *Kyle v. Bellenger*, 79 Ala. 516, 520, 521. So the right of the companies to the protection accorded bona fide purchasers,

for value and without notice cannot be affected or de-
nied because of the registration of the notes set out in
this record.

(5) In the two actions instituted in the Cleburne
circuit court against W. P. Ayers by the companies,
to enforce the collection of their respective debts
against W. P. Ayers, he pleaded, in each action, the
asserted fact that he had been adjudicated a bankrupt.
The circuit court denied him any advantage from that
fact. It is insisted that the pleaded fact of adjudicat-
ed bankruptcy of the debtor was sufficient to put the
creditors, plaintiffs, on inquiry which, if pursued with
reasonable diligence, would have led them to consult
the debtor's petition in bankruptcy, whereon, as con-
templated by the Bankruptcy Act, was noted the fur-
ther fact that lands owned or claimed by the debtor, de-
fendant, were subject to a vendor's lien for unpaid pur-
chase money. It is said in *Center v. Bank,* 22 Ala. 743,
757, that: "Lis pendens is notice of every fact contain-
ed in the pleadings, which is pertinent to the trial of
the matter put in issue by them. * * * "

Undoubtedly, and for even stronger reason, knowl-
edge of the fact of the debtor defendant's adjudication
of bankruptcy must, in consequence of the pleading
thereof by him, be conclusively imputed to the plain-
tiffs, in those actions, regardless of whether they were
actually informed of the fact or not. The concrete ques-
tion then is: Was knowledge of the fact of the debtor
defendant's adjudication of bankruptcy sufficient or ef-
fective to put the duty on the plaintiffs to consult the
petition and proceedings in the bankruptcy matter to
ascertain the nature and character of the defendant's
indebtedness and whether it was secured, in whole or
in part, by liens, contractual or imposed by law, on
the lands owned or claimed by the debtor defendant?

The information thus to be imputed to the plaintiffs was to this effect and result: That the defendant was indebted, and that to a degree beyond his power to discharge. "Notice of an incumbrance puts one upon inquiry as to the particulars of the indebtedness, but knowledge of the existence of a debt does not put one upon inquiry to ascertain whether it is secured."—*Johnson v. Valido Co.*, 64 Vt. 337, 348, 25 Atl. 441.

We do not think the fact that Ayers was by his own assertion and as accordingly adjudicated in the bankruptcy court—both facts knowledge of which were imputable to the plaintiffs—insolvent sufficient to deny or to qualify the application of the sound rule announced by the Vermont court. In order to conclude in favor of the imposition of the duty to make reasonable inquiry, it is essential that the information imparted to the party to be charged should tend to show the existence of the conflicting right or interest as a fact, though, of course, the information "need not be so full as to afford a complete description of the opposing interest."—*Wahl v. Stoy*, 72 N. J. Eq. 607, 614, 66 Atl. 176; 3 Pom. Eq. Jur., § 597. Here the facts imputed, as stated, to these plaintiffs, bore no remote suggestion of an outstanding lien on lands. They imported no more than that the defendant was insolvent, and had been so adjudicated. A reasonably prudent man could not find in pondering these facts the suggestion that the debts were secured or that land liens were outstanding. These facts bore no tendency to show or to advise a lien outlay to secure any debt of the sum making defendant insolvent. So we conclude the pleaded, and thus known, fact of adjudicated bankruptcy did not devolve a duty of inquiry upon plaintiffs.

(6, 7) It is further insisted that notice of the outstanding vendor's lien should be imputed in consequence

of the circumstances to be stated. Before going into this it is well to say that notice or knowledge of pertinent facts or circumstances received by an agent or attorney while in the authorized particular service of the principal or client is imputed to the principal or client, notwithstanding the principal or client had no actual knowledge or notice of the facts or circumstances.—*Price v. Carney,* 75 Ala. 554. From an indorsement made by the judge of the circuit court of Cleburne county upon the file cover in the case of *Grambling-Spalding Co. v. W. P. Ayers,* it appears that one of plaintiff's attorneys, with the permission of the court, withdrew the "petition and order in bankruptcy." It is at least fairly certain that the reference was to the petition of W. P. Ayers, who pleaded his bankruptcy in that cause. It is also to be inferred that the petition and order were court papers. The attorney to whom the memorandum attributes the withdrawal of the papers does not deny the recited fact, but affirms his want of any "recollection" in the premises. We think it must be ruled that the papers indicated were withdrawn by the attorney named. Under the circumstances disclosed, it must be further concluded that the contents of the petition was known to the attorney of the plaintiff. It is not conceivable that such was not the fact if, as appears, the paper (petition) was of the file in the cause. The loss of the petition was established. Its withdrawal, after permission sought and granted to that end, leaves no real basis for doubt of the use of the paper in the litigation had in the circuit court. This knowledge of the attorney must be imputed to the plaintiff, in that court, under the doctrine before stated. The language of the petition (schedule) in reference to an outstanding vendor's lien was as follows: "This land is incumbered by notes for purchase

money retaining vendor's lien upon the same, said notes executed by petitioner and amounting [to] $1,-500.00, none which has been paid, and said notes payable to Sarah E. Kemp, but now held by Morgan Kemp, as trustee for the heirs of Mrs. Kemp. Estimated value, $1,500.00."

Just preceding the matter quoted from the schedule the petitioner listed the following described lands as owned and held by the petitioner: "North ½ of S. W. ½ and N. W. ¼ of section 36, and S. W. ¼ of S. E. ¼ and N. E. ¼ of S. E. ¼ of section 25, township 17, range 10."

This description did not include all, but did include the major part, of the land here involved.

(8) Our opinion is that the information borne, under the fact and circumstances, by implications of law to the Grambling-Spalding Company by the indicated feature of the petition, imposed upon it the duty of inquiry, which, if followed up with reasonable diligence, would have advised the company of the status and extent of the outstanding lien in favor of Mrs. Camp, or of her successors in right. A reasonably prudent man, advised as the quoted matter of the petition did inform, would most naturally have made reasonable inquiry in the premises; and, if made, the disclosure would have been of the actual existence of a vendor's lien on the whole land sought by this bill to be declared and enforced. The mistake in the name "Kemp" for "Camp" would and could have been readily ascertained. "Notice that will lead to knowledge on inquiry is in law in such cases equivalent to knowledge." —*Creel v. Keith,* 149 Ala. 233, 236, 41 South. 780, 781, 39 Cyc. pp. 1703-1706.

(9) It was claimed for complainant that, prior to contracting for the purchase of the land and pending

Ayers' inspection of it, Ayers was put upon inquiry that would have discovered the fact, by a statement in his presence by J. R. Bain to the effect, that there was doubt about the title, and that W. P. Ayers had not paid the purchase money therefor. The conflicting evidence on this issue has been carefully reviewed. Our conclusion is that the matter of Bain's statement was made in C. K. Ayers' presence and hearing and bore to him such notice of the then existing lien now asserted as precluded him to the extent to be indicated from being an innocent purchaser for value and without notice. Bain testified positively to his statement in Ayers' immediate presence at Bain's residence. Marcus L. Brown testified that Bain made the statements indicated during the day and occasion when Ayers, Bain, and he were there to inspect the place, but could not remember where they were when the statements were made or whether Ayers was present and heard the statements. Ayers denied that he heard any such statements. The conflict is irreconcilable. It is, of course, regrettable that such conflicts arise; but, having arisen, it must be decided. Bain appears to be wtihout concern with or interest in the contest. He is corroborated by Marcus L. Brown to the extent that the statement was made by Bain on that occasion. Naturally Ayers is an interested witness, and Bain and Brown do not appear biased in the premises. Bain's relation to the land as agent for the companies in looking after it and Brown's call upon Bain to aid and accompany him and Ayers on the inspection of the place, together with the fact that all three appear to have been associated at Bain's house for the midday meal and during the inspection, leave no alternative but to conclude as has been stated.

[Silvey & Company v. Cook.]

These considerations lead to the following concrete results: (a) Silvey & Co. were bona fide purchasers for value and without notice of an undivided interest in and to the land in action and conveyed to C. K. Ayers; (b) C. K. Ayers is entitled to be protected against the vendor's lien in respect of his purchase of the undivided interest in the whole acreage coming to him by quitclaim, or otherwise, from Silvey & Co.; (c) the vendor's lien for the full amount thereof was and is superior to any rights accruing to the Grambling-Spalding Company in virtue of its judgment and purchase at the execution sale of an undivided interest in and to the land described in the bill. The respective proportional interests of these two companies in the lands bought at the execution sale were according to the amounts the indebtedness of W. P. Ayers to both the companies.

The decree appealed from is reversed. The cause is remanded to the chancery court, that the conclusions announced in this opinion may be given appropriate effect. All the costs of and on the appeal will be equally apportioned, and so taxed, between the Grambling-Spalding Company and the appellee. The court below will apportion the costs already incurred and those to accrue as it deems fair and just.

Reversed and remanded. All the justices concur.