73 So.2d 524

**WATERS**

v.

**AMERICAN CAS. CO. OF READING, PA.**

**6 Div. 432.**

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied April 22, 1954.

Further Rehearing Denied June 30, 1954.

Wm. S. Pritchard, Victor H. Smith and Pritchard, McCall & Jones, all of Birmingham, for appellant.

Geo. W. Yancey, 'Jas. E. Clark, London & Yancey, and Francis H. Hare, all of Birmingham, for appellee.

PER CURIAM.

This is an action by the insured (Waters) against the insurer when the verdict of the jury exceeded the policy limits, and the insurer had an opportunity to settle within the policy limits prior to the verdict.

In 1946, Mr. Waters, plaintiff and appellant here, owned the Delmar Theatre in Birmingham. Mrs. Beatrice Anthony claimed that she was injured in that the seat she undertook to occupy in the theatre had no bottom, and that in sitting she sat down on the floor without being prevented by the seat. She sued Mr. Waters for $50,000, and the jury returned a verdict in her favor for $20,000, which was reduced to $15,000 by this Court. Waters v. Anthony, 252 Ala. 244, 40 So.2d 316.

Mr. C. R. Anthony, husband of Mrs. Beatrice Anthony, sued Mr. Waters for $5,000 for loss of services of his wife. The verdict in his case was for $5,000, which was reduced to $3,500 by this Court. Waters v. Anthony, 256 Ala. 370, 54 So.2d 589. Mrs. Anthony's case was tried in February 1948, Mr. Anthony's case in May 1948. When the cause of action in these two cases arose, Mr. Waters had $5,000 liability insurance with the defendant, American Casualty Company of Reading, Pennsylvania, appellee. The casualty company paid the $5,000 it had contracted to pay under its policy, and Mr. Waters sues for the difference between the $5,000 and the amount of recovery. (At the time of the trial of the instant case, this Court had not rendered its decision in the C. R. Anthony case.)

The complaint as amended consisted of count one and count A. Count one charged defendant with negligence in that: Defendant, its servants, agents and attorneys negligently failed or refused to settle said claim for damages against this defendant for the sum of $5,000 within the limits of said policy.

Count A charged defendant with bad faith in "that the defendant, by and through its agents and attorneys, while acting in the line and scope of their employment, knowing that credible sworn testimony had been introduced on the trial of said action of the said Mrs. Anthony against the plaintiff, * * * the defendant failed to perform the duty it owed this plaintiff and the exercise of good faith in the negotiations for the settlements of said claims and suits, but, on the contrary, wrongfully and in bad faith, and acting for its own interests, wrongfully failed, declined or refused to settle said claim after the institution of said suits against this plaintiff."

Defendant's demurrer being overruled, the defendant plead the general issue and estoppel in short by consent. The trial court sent the case to the jury on both counts. Verdict was for the defendant and plaintiff appeals.

Appellant argued eight assignments of error, four (1, 2, 6 and 11–a) dealing with charges given at the request of appellee, three (16, 20 and 21) with answers given by attorneys who testified as experts and one (24) with the court's ruling on alleged improper argument to the jury.

Appellee had two cross-assignments of error in his original brief which was not filed when the cause was submitted, nor do we find the cross-assignments of error written in the record as required by Supreme Court Rule No. 3 as amended, Code 1940, Tit. 7 Appendix. Under the authority of Andrews v. Sullivan, Ala.Sup., 69 So.2d 870, these cross-assignments are not considered.

This question, presented here, has not been previously decided by this Court. We are aware that in cases of this nature courts generally hold that there may be liability on the part of the insurer for the excess of the judgment above the policy limits, but there is a division among

them as to whether the liability of the insurer is based on (1) the rule of bad faith or (2) the rule of negligence. 131 A.L.R. 1500; 71 A.L.R. 1485; 43 A.L.R. 329; 37 A.L.R. 1484; 34 A.L.R. 750; 45 C.J.S., Insurance, § 936, p. 1069; 8 Appleman Insurance Law and Practice, Sections 4712 and 4713. We hold that there may be liability under both rules and properly drawn counts based either on negligence or bad faith should be held good, and separate counts, one charging negligence and one charging bad faith may be joined in the same complaint.

■■ This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So. 2d 459. When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty—but does not imply a contract—to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached. Such is the result of our cases cited above.

In the instant case there is no express contract to exercise reasonable care in performing the duties required of the insurer. Therefore, for negligence in the performance of those duties an action in tort only will lie, and then only if the law imposes a duty to exercise due care. Such is the nature of count one charging negligence. Count A charges bad faith which

is tantamount to an intentional failure to perform those duties.

The question which has given rise to much difference of opinion is whether or not the law implies a duty to exercise ordinary care in the performance of the contract, or whether it only requires good faith in its performance. We know of no particular reason why there should be any difference between the duty imposed by law in respect to the contract here involved and as to any other contract. 8 Appleman Insurance Law and Practice, section 4713; 45 C.J.S., Insurance, § 936, p. 1069.

■ We know of no other situation where a negligent act proximately resulting in damages to another requires that there must have been bad faith also in order to give rise to a cause of action. They constitute different concepts. They may be joined in separate counts in a suit, and either may exist without the other.

■ The question is asked in some of the authorities, "What would constitute negligence in the failure to settle a case as distinguished from bad faith?" 131 A.L.R. 1501. The answer is that it is a question for the jury from all the facts and circumstances to determine whether the failure on the part of the insurer to make settlement is an act of negligence or one of bad faith. Both of those terms have a well understood meaning, and we do not see any reason why we should stumble over their application. In this connection it is well to observe that the mere failure on the part of the insurer to make a settlement within the limits of his contract when he has an opportunity to do so is not alone evidence of negligence or bad faith.

■ The allegation of negligence is made in one count of the complaint and bad faith in the other. In order to succeed it is necessary for the plaintiff to prove either negligence or bad faith. There is no presumption under the circumstances of this case of either negligence or bad faith. The principle of res ipsa loquitur has no application here and, therefore, the

issue is simply made here as in all negligence cases whether, considering all the circumstances, the insurer failed to exercise ordinary care on the one hand or good faith on the other.

The evidence in the instant case consisted chiefly of the record of the testimony in the case of Mrs. Beatrice Anthony, the appellant attempting to show that the Anthony claim was well founded and strong. The appellee attempted to show that the alleged injuries of Mrs. Anthony could not have been received in the Delmar Theatre if Mr. Waters, his agents and employees were to be believed. It was undisputed that Mr. Waters notified defendant during the course of the trial that the two cases could be settled for $5,000, and suggested "that you consider this proposition of settlement for that it is our thought as attorneys for your policy holders, the defendants in the caption cases, that the cases should be settled".

It was also undisputed that Mr. Waters and his personal attorney could have settled the C. R. Anthony case for $1,000, but chose to try it on the same facts in Mrs. Anthony's case, and the verdict was for $5,000.

Assignments of error 16, 17, 20 and 21 deal with the admissibility of the testimony of Mr. Williams and Mr. Grooms, attorneys experienced in damage suit practice, in which the court permitted them to answer hypothetical questions based upon evidential facts which were or could have been the basis of the decision to try the case instead of settling it.

Mr. Williams, testifying for the defendant, was asked, after the facts had been hypothesized, "Based upon that statement of the accident, and assuming that is the way it happened and assuming that is the situation that confronted Mr. Yancey, if you had been handling the case and had been in the same position he was, would you have paid $5,000.00 to settle that case?" The question asked Mr. Grooms, called by defendant, based on the same hypothesis, was: "I ask you please to state whether or not if you had been handling the case, would you have taken a different position or the same position? In other words, with

respect to paying or not paying the policy limits, or paying that demand." Each of the latter witnesses testified in effect that they would have taken the same position as that taken by Mr. Yancey.

These questions called for answers which invaded the province of the jury, and permitting the witnesses to answer them was error in that this was the very issue in the case. State v. West Point Manufacturing Co., 236 Ala. 467, 183 So. 449.

Appellee contends that the evidence of Messrs. Williams and Grooms was expert testimony in contradiction to expert testimony previously given by Mr. Jones, one of Mr. Waters' attorneys.

On direct examination Mr. Jones, testifying for plaintiff, said: "In my opinion, as a practicing attorney, the case was dangerous, and I talked with Mr. Yancey and asked him had he considered a settlement, and he said 'yes, I did but the best settlement I could get was $7,500.' I said, 'Mr. Yancey, the policy provides you shall handle all settlements but do I have your permission to settle the case within the terms of the policy' which was $5,000.00, and he said, 'yes, but I don't think you can do it'."

There was no objection to this statement or any part of it. We cannot agree that the expert testimony offered by defendant was admissible to contradict the statement of Mr. Jones. We will note however that the expert testimony of Mr. Jones in rebuttal was infected with the same vice as that of Mr. Grooms and Mr. Williams.

The treatment of the above assignments renders it unnecessary to discuss assignment of error 21.

We think this type of case is one in which expert testimony can very well be accepted, but the questions and answers thereto should be proper.

Assignment of error 24 is as follows:

"The circuit court erred in overruling the objection of appellant and request of the court to instruct the jury not to consider the statement of Mr. Hare, attorney for the defendant, in

his argument to the jury as follows: 'Gentlemen, they had the whole Birmingham bar and they called one lawyer—Col. Pritchard brought his own young lawyer and he is the only one.' "

Six attorneys were called to testify in this case, two by the plaintiff, four by the defendant. Since the plaintiff had ample opportunity to answer the statement in his closing argument, we find no reversible error in the court's failure to exclude it.

Assignment of error No. 1 complains of the giving of charge No. 23, and assignment No. 2 complains of the giving of charge No. 25 both requested by the defendant. Each of these charges invaded the province of the jury and should not have been given.

Assignment of error No. 6 complains of the giving of charge A–8 for the defendant. It was not reversible error to give this charge.

Assignment of error 11–a complains of the giving of charge B–3 for the defendant. This charge should not have been given because the gravamen of the charge was the negligence (count one) or bad faith (count A) of defendant and not of Mr. Yancey. There is no evidence that Mr. Yancey had authority to settle, and the facts hypothesized are not shown to have been known to him or to the defendant at the time they acted on the proposal of settlement.

Defendant contends that the plaintiff, Mr. Waters, "is estopped in this action to assert and claim that trial counsel for the defendant was guilty of bad faith or negligence in his decision to try the case of Mrs. Anthony, and not to settle the Anthony cases."

This contention is based on the fact that the plaintiff here, Mr. Waters, and the theatre manager had signed answers to interrogatories saying that no seat bottom was out or had been out during the period when Mrs. Anthony alleged that she had been injured; that Mr. Waters maintained this position not only during the trial of Mrs. Anthony's case, but also during the trial of Mr. Anthony's case which Mr. Waters and not the appellee was defending.

We have examined the cases cited in support of this claim but we do not think they apply here, either to establish estoppel in *pais* or estoppel by record. These facts were for the consideration of the jury along with all the other facts and circumstances of the case.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY, GOODWYN, and MERRILL, JJ., concur.

On Rehearing

PER CURIAM.

We have been urged to extend the opinion in this cause as to the application of the rules of negligence and bad faith and as to the effect of the opinion upon the liability of attorneys representing the insured upon appointment by the insurer. We first consider negligence and bad faith in cases of this nature.

There is a field of operation for both aspects of liability: that is, negligence in one, and bad faith in the other. We cannot set aside the principle of liability for negligently performing a contract as set forth in the opinion supra. It may arise when an insurer is engaged in performing his contractual duty owing to the insured to defend the suit. The law raises a duty not contractual, but by reason of the contract, to exercise ordinary diligence in doing so. A failure to exercise ordinary diligence proximately causing damage to the insured is actionable in tort. The contract of insurance gives the insurer the exclusive right to make a settlement of the claim against insured. That right imposes a corresponding duty raised by law to observe ordinary diligence in performing that power, when in the exercise of it. So that, when an opportunity is presented to the insurer to make a settlement of the claim

in an amount not more than the limit of liability, the law raises a duty on his part to use ordinary care to ascertain the facts on which its performance depends if he has not already done so. If the insurer neglects to exercise ordinary diligence in ascertaining these facts, if he has not already done so, and as a proximate result of such neglect he fails to make such a settlement, which is available, and when such knowledge would have caused a reasonably prudent person to do so, and a verdict and judgment are rendered against insured in an amount more than the limit of liability in the policy, the insurer should be held liable to the insured for the full amount of the judgment.

 If the insurer has already made the investigation and ascertained the facts, to which we have referred supra, and refuses to make such proffered settlement, if such refusal is due to the honest judgment of insurer that the facts do not warrant such a settlement, and the insurer was not negligent in the manner of defending the suit, he would not be liable to insured for an amount in excess of the limit of liability provided in the policy, although the verdict and judgment were in excess of it. But if such refusal to settle under those circumstances is the proximate result of bad faith on the part of the insurer, he would be liable for the full amount of the judgment, notwithstanding it is in excess of the limit fixed in the policy.

 We have been speaking of the duty and liability of the insurer and not of his attorney. Of course the attorney must exercise ordinary diligence and skill throughout. That imposes a duty on him to inform the insurer of a proposal of the plaintiff to settle within the limit of the liability. Whether or not he does so in fact, the insurer is charged with the notice to him which he received in the course of his employment the same as if he had in fact so notified the insurer. Silvey & Co. v. Cook, 191 Ala. 228 (6), 68 So. 37; Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Dumas v. Hartford Accident & Indem. Co., 94 N.H. 484, 56 A.2d 57. The attorney owes no duty to the insured in that connection. If he fails to notify the insurer as his employer, the issue is between them alone, for as to the insured the status is as though the attorney had so notified the insurer.

The question is whether there was a failure of the insurer to perform his duty to the insured, having the information which his attorney had. That question has been discussed above.

In the instant case the evidence is without dispute that—

(1) The offer of settlement was handed to Mr. Yancey during the second day of the trial.

(2) He did not have authority to settle nor did anyone in Birmingham have such authority.

(3) He and his partner discussed the offer of settlement after court had adjourned on the second day of the trial and concluded that the case was one that ought to be tried and should not be settled.

(4) Having reached this conclusion he did not notify the insurer of the offer because he was not willing to recommend its acceptance.

 As stated above, the action of Mr. Yancey, acting within the line and scope of his employment, was the action of his client, the insurer; therefore, the question of good faith was properly left to the jury.

 Nothing in this opinion is to be construed as holding or inferring that a mere mistake in judgment on the part of an attorney in recommending the acceptance or rejection of a settlement would constitute negligence or bad faith.

Opinion extended and application for rehearing overruled.

All the Justices concur except CLAYTON, J., not sitting.