970 So.2d 292 (2007)
MUTUAL ASSURANCE, INC.
v.
William Joseph SCHULTE, M.D., and Pulmonary Associates of Mobile, P.A.
1050092.
Supreme Court of Alabama.
April 20, 2007.
W. Stancil Starnes, Laura H. Peck, and G. Matthew Keenan of Starnes & Atchison, LLP, Birmingham, for appellant.
D. Leon Ashford and Bruce J. McKee of Hare, Wynn, Newell & Newton, L.L.P., Birmingham, for appellees.
STUART, Justice.
Dr. William Joseph Schulte and Pulmonary Associates of Mobile, P.A., sued Mutual Assurance, Inc. ("MAI"), their medical-malpractice insurance provider, alleging that MAI had negligently or in bad faith refused to settle a malpractice claim against them, which claim ultimately *294 resulted in a judgment exceeding the limits of their medical-malpractice insurance policies and for which excess Dr. Schulte and Pulmonary Associates were individually liable. After the trial court denied MAI's motion for a summary judgment, MAI petitioned this Court for permission to file an immediate appeal pursuant to Rule 5, Ala. R.App. P. We granted the petition and now affirm the order of the trial court inasmuch as it denied MAI's summary-judgment motion as to Dr. Schulte and Pulmonary Associates' negligent-failure-to-settle claim. We express no opinion as to that part of the trial court's order denying MAI's summary-judgment motion as to the bad-faith-failure-to-settle claim because our decision on the negligent-failure-to-settle claim and the unique procedural posture of this case renders a review of that claim unnecessary.

I.
In April 1990, Woodrow Smith sued Dr. Schulte and Pulmonary Associates, Dr. Schulte's medical group, alleging that Dr. Schulte had committed malpractice while treating Smith's wife, Annie Jo, and that she had died as a result of that malpractice. At the time of the alleged malpractice, Dr. Schulte and Pulmonary Associates were each covered by medical-malpractice insurance policies issued by MAI. Each policy provided up to $1,000,000 in coverage per incident; thus, MAI's total exposure in regard to Smith's claim was $2,000,000-$1,000,000 on Dr. Schulte's policy and $1,000,000 on Pulmonary Associates' policy.
According to Dr. Schulte and Pulmonary Associates, Smith made multiple offers before trial to settle his claim for the limits of the policies. MAI, however, declined to settle. MAI's decision not to settle the claim was premised, at least in part, on § 6-5-547, Ala.Code 1975, which capped damages in wrongful-death medical-malpractice cases at $1,000,000, plus an additional amount adjusted annually for inflation.[1] In that posture, the case thereafter proceeded to trial in March 1993.
On April 6, 1993, the jury returned a verdict in favor of Smith and against Dr. Schulte and Pulmonary Associates for $4,500,000. Dr. Schulte and Pulmonary Associates moved the trial court to reduce the award, arguing both that it was excessive and that it should be reduced in accordance with § 6-5-547. Smith argued in response that § 6-5-547 violated the Alabama Constitution and should therefore be declared invalid. Following a hearing, the trial court ruled that the damages award was not excessive, but it refused to declare § 6-5-547 unconstitutional. Accordingly, it reduced the damages award to $1,276,873 to comply with § 6-5-547. Both parties then appealed the trial court's judgment to this Court, which, in Smith v. Schulte, 671 So.2d 1334 (Ala.1995), held that the cap on damages in § 6-5-547 did in fact violate the Alabama Constitution. However, this Court held that the *295 $4,500,000 verdict was excessive and remitted the damages award to $2,500,000.
MAI thereafter paid the $2,000,000 it was liable for under its policies with Dr. Schulte and Pulmonary Associates and loaned them an additional $1,150,000 to pay the remainder of the judgment and the accumulated postjudgment interest. In June 1996, Dr. Schulte and Pulmonary Associates filed the action underlying this appeal, claiming that MAI could have settled the malpractice case with Smith within the limits of their policies but had failed to do so, either negligently or in bad faith; therefore, Dr. Schulte and Pulmonary Associates argued, MAI was also liable for that part of the judgment that exceeded the limits of their policies.
In July 2004, MAI moved the trial court for a summary judgment, arguing that it could not be found to have negligently or in bad faith failed to settle Smith's claim for the $2,000,000 limit of their policies because, MAI said, its decision not to settle was made in reliance upon what was at that time a valid state law, § 6-5-547, which capped MAI's liability for the malpractice incident at approximately $1.2 million. Dr. Schulte and Pulmonary Associates opposed the motion, arguing that a fact-finder should determine whether MAI's reliance on § 6-5-547 was reasonable in light of the fact that "in 1992-93, every reasonable lawyer and insurer doing business in Alabama had to know and recognize that it was highly likely that [§ 6-5-547] was unconstitutional." This is so, Dr. Schulte and Pulmonary Associates claim, because this Court had by that time already declared unconstitutional other statutes that, like § 6-5-547, were part of a package of tort-reform legislation enacted by the Alabama Legislature in 1987. See Armstrong v. Roger's Outdoor Sports, 581 So.2d 414 (Ala.1991) (declaring § 6-11-23 and § 6-11-24(a) unconstitutional); Clark v. Container Corp. of America, 589 So.2d 184 (Ala.1991) (declaring part of § 6-11-1, and all of § 6-11-3, § 6-11-4, and § 6-11-5 unconstitutional); and Moore v. Mobile Infirmary Ass'n, 592 So.2d 156 (Ala.1991) (declaring § 6-5-544(b) unconstitutional).
In September 2005, the trial court denied MAI's motion for a summary judgment. However, the trial court simultaneously certified its order for interlocutory appellate review pursuant to Rule 5(a), Ala. R.App. P. MAI subsequently petitioned this Court for permission to appeal, and we granted the petition on August 2, 2006.

II.
"We apply the same standard of review [in reviewing the grant or denial of a summary-judgment motion] as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

*296 III.
Dr. Schulte and Pulmonary Associates have stated two claims against MAI: one alleging negligent failure to settle and one alleging bad-faith failure to settle. In Waters v. American Casualty Co. of Reading, Pa., 261 Ala. 252, 258, 73 So.2d 524, 528 (1953), this Court confirmed that these are in fact two distinct claims, stating that "there may be liability under both rules and properly drawn counts based either on negligence or bad faith should be held good, and separate counts. . . ." However, although the facts necessary to establish these separate claims are usually closely related, the claims do require different proof. To succeed on a claim alleging negligent failure to settle, a plaintiff must establish that, considering all the circumstances, the insurer in deciding not to settle the claim failed to exercise reasonable or "ordinary care," that is, such care as a reasonably prudent insurer would have exercised under the same or similar circumstances. Waters, 261 Ala. at 259, 73 So.2d at 529. However, the inquiry relevant to a claim alleging bad faith failure to settle is whether the insurer's failure to settle had any "lawful basis," that is, whether the insurer had any "`legitimate or arguable reason for failing to pay the claim.'" National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982) (quoting Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924 (Ala.1981)).
Despite this distinction, MAI's appellate brief makes no differentiation between the plaintiffs' negligent-failure-to-settle and bad-faith-failure-to-settle claims. Instead, MAI implicitly combines the claims and argues that summary judgment was appropriate as to both claims because, it says, MAI had a lawful basis for refusing to settle the underlying medical-malpractice claim:
"MAI had a lawful basis (i.e., reliance on a valid damages cap) for its refusal to settle. That is all that is required of an insurance carrier. To hold otherwise, would undermine the integrity of all laws on which insurance carriers, as well as citizens of the state of Alabama, can rely. For these reasons, MAI was entitled to summary judgment on the negligence and bad-faith claims, and the trial court erred in not granting [MAI's motion for a] summary judgment."
(MAI's brief, p. 15.) However, although the existence of a lawful basis for MAI's refusal to settle would be a defense to Dr. Schulte and Pulmonary Associates' bad-faith-failure-to-settle claim, it is not a complete defense against their negligent-failure-to-settle claim. To defend against that claim, MAI would still need to establish that a reasonably prudent insurer would have relied upon that same lawful basis to refuse to settle the claim.
Nevertheless, although MAI does not specifically address the negligent-failure-to-settle claim, it does make the general argument that an insurer's reliance on a validly enacted statute should be presumed reasonable as a matter of law. We think that under the specific facts of this case the determination of whether MAI's reliance on § 6-5-547 was reasonable is a question that is better left to the trier of fact. MAI makes no other argument addressing Dr. Schulte and Pulmonary Associates' negligent-failure-to-settle claim; accordingly, the trial court's order is affirmed inasmuch as it denied MAI's motion for a summary judgment as to that claim.
Ordinarily, we would now consider MAI's argument that it was entitled to a summary judgment on Dr. Schulte and Pulmonary Associates' bad-faith-failure-to-settle claim. However, the unique procedural posture of this case makes that inquiry *297 unnecessary. The parties have agreed among themselves that if MAI's argument  that a party's reliance on a validly enacted statute should be presumed reasonable as a matter of law  is not accepted by this Court, MAI will accept responsibility for the $1,150,000 Dr. Schulte and Pulmonary Associates paid in excess of their policy limits, and this litigation will come to a close.[2] Accordingly, we need not consider the bad-faith-failure-to-settle claim and whether MAI's reliance on § 6-5-547 was nevertheless a "legitimate or arguable reason" for failing to settle the underlying claim. National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d at 183.

IV.
MAI moved for a summary judgment on Dr. Schulte and Pulmonary Associates' negligent-failure-to-settle and bad-faith-failure-to-settle claims, arguing that its decision not to settle the underlying claim was made in reliance upon § 6-5-547, which unambiguously capped MAI's liability on that claim at a sum less than that at which settlement was offered. Reliance upon a validly enacted statutory damages cap, MAI argues, precludes a finding of negligence or bad faith. The trial court entered an order denying MAI's motion for a summary judgment as to both of Dr. Schulte and Pulmonary Associates' claims on the basis that the trier of fact should determine whether MAI's reliance on § 6-5-547 was negligent or in bad faith. We now affirm that order as it relates to the negligent-failure-to-settle claim. Because of the agreement between the parties, we need not consider MAI's argument as it relates to the remaining bad-faith-failure-to-settle claim, and the trial court's judgment is hereby affirmed.
AFFIRMED.
SEE, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and LYONS, WOODALL, and MURDOCK, JJ., concur in the result.
LYONS, Justice (concurring in the result).
The question before us is limited to "whether [MAI] had an absolute right to rely on the damage[s] cap . . . no matter what other facts might or might not exist." (Some emphasis added.) I consider the reference to "other facts" to mean facts other than the availability of the damages cap. Under this view, the strengths or weaknesses of the particular facts associated with MAI's reliance are irrelevant to whether MAI had an absolute right simply by reason of the presence of a statute entitled only to a rebuttable presumption of constitutionality. If the question were posed in terms of whether MAI had a right to a summary judgment upon Dr. Schulte and Pulmonary Associates' failure to adduce facts sufficient to create a jury question as to the presumption of constitutionality, then the facts of this case would be material.
The main opinion recognizes the limited scope of the issue by referring to MAI's "general argument that an insurer's reliance on a validly enacted statute should be presumed reasonable as a matter of law." 970 So.2d at 296. The main opinion than states: "We think that under the specific facts of this case the determination of whether MAI's reliance on § 6-5-547 was reasonable is a question that is better left to the trier of fact." 970 So.2d at 296. *298 For the reasons previously noted, I cannot concur with a statement recognizing the materiality of the facts of this case under the terms of the narrow issue before this Court.
I therefore concur in the result.
COBB, C.J., concurs.
WOODALL, Justice (concurring in the result).
I concur in the result of the main opinion. In granting MAI permission to appeal, this Court agreed to review the single issue identified in the trial court's Rule 5(a), Ala. R.App. P., certification order, namely, the "narrow legal issue [of] whether [MAI] had an absolute right to rely on the damage[s] cap . . . no matter what other facts might or might not exist." (Emphasis in original.) Consequently, in my opinion, the resolution of the only issue presented is not dependent upon the specific facts of this case. However, in reviewing the issue, the main opinion properly rejects MAI's "argument that an insurer's reliance on a validly enacted statute should be presumed reasonable as a matter of law." 970 So.2d at 296. Indeed, "the issue is simply made here as in all negligence cases whether, considering all the circumstances, the insurer failed to exercise ordinary care. . . ." Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 258-59, 73 So.2d 524, 529 (1953) (emphasis added). As Dr. Schulte and Pulmonary Associates argue, "the existence of the cap statute is just one factor, among many, for the jury to consider in deciding whether MAI acted like a reasonably prudent insurer." Dr. Schulte and Pulmonary Associates' brief, at 8.
In its Rule 5(a) certification order, the trial court stated that "the parties have agreed . . . that the ultimate outcome of MAI's motion [for a summary judgment] will terminate the litigation." Consequently, I agree that the Court need not consider the effect, if any, of the damages-cap statute on Dr. Schulte and Pulmonary Associates' bad-faith-failure-to-settle claim.
MURDOCK, Justice (concurring in the result).
Consistent with the special writings of Justice Lyons and Justice Woodall, I note that the only question before this Court in this Rule 5, Ala. R.App. P., permissive appeal is the very narrow question whether the existence of a validly enacted statute automatically precludes in every case any further inquiry into whether an insurer has acted reasonably in presuming the constitutionality of that statute and relying thereon in its decision not to settle a claim against its insured. By stating that it does not, we will have stated all that we need state in order to decide the question before us. Because our review is properly limited to this question, and because upon our decision of this question other issues will become moot in light of the parties' agreement that, if we decide this question in the negative, MAI will accept responsibility for the $1,150,000 excess judgment and this litigation will come to a close, the discussion of other issues is dicta. In this regard, I note that it is not necessary for this Court to address the issues whether the rebuttable presumption of the constitutionality of a validly enacted statute that governs the courts in our consideration of those statutes is available to an insurer and how that presumption might bear on the determination in any given case of whether the insurer acted reasonably or in good faith in presuming the statute to be constitutional; the issue whether in a case postured like the present one there is any difference between whether an insurer has acted reasonably in relying on the constitutionality of a statute and whether it has *299 acted in bad faith in relying thereon; and the issue whether, because the more basic question of the constitutionality of a statute is itself a question of law for the court, rather than the finder of fact, the finer question of the reasonableness of the insurer's reliance upon the constitutionality of a statute, or upon the presumption of such constitutionality, ought likewise to be considered a question of law for the same court, albeit one to be decided on a case-by-case basis.
NOTES
[1] Section 6-5-547 states, in relevant part:

"In any action commenced pursuant to Section 6-5-391 or Section 6-5-410, against a health care provider whether in contract or in tort based on a breach of the standard of care the amount of any judgment entered in favor of the plaintiff shall not exceed the sum of $1,000,000. Any verdict returned in any such action which exceeds $1,000,000 shall be reduced to $1,000,000 by the trial court or such lesser sum as the trial court deems appropriate in accordance with prevailing standards for reducing excessive verdicts. . . . The maximum amount payable under this section, $1,000,000, shall be adjusted on April fifteenth of each year to reflect any increase or decrease during the preceding calendar year in the consumer price index of the United States Department of Commerce."
[2] Dr. Schulte and Pulmonary Associates state in their brief that our resolution of this issue will "terminate the action." Thus, they are apparently willing to abandon their claims for additional compensatory damages and/or punitive damages.